Joshua Trigsted WSBA#42917
Trigsted Law Group, P.C.
5200 SW Meadows Rd, Ste 150
Lake Oswego, OR 97035
888-247-4126, ext. #1
866-927-5826 facsimile
josh@tlgconsumerlaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

|  |  |
|---|---|
| **JACLYN MURPHY,** | ) Case No.: 2:20-cv-00030-SMJ |
|  | ) |
| Plaintiff, | ) **RESPONSE TO DEFENDANT'S MOTION** |
|  | ) **FOR SUMMARY JUDGMENT** |
| vs. | ) |
|  | ) |
| **AUTOMATED ACCOUNTS, INC.,** | ) |
|  | ) |
| Defendant. | ) |
|  | ) |
|  | ) |

I.    SUMMARY

The sole allegation in this case is that Defendant's representative misrepresented in a telephone conversation on March 21, 2019, between Plaintiff and Defendant, that Defendant had already reported information about the debt to Plaintiff's credit report.  Defendant admits in its statement of facts that it did not actually relay any information to the credit bureaus until April 1, 2019, so there is no genuine dispute that the alleged statement, if made, was indisputably false. The only genuine dispute of fact, therefore, is whether Defendant's representative actually told

Plaintiff that the reporting had already occurred during the March 21, 2021, conversation. This is a genuine dispute of fact because the conversation was not recorded and Defendant and Plaintiff have presented opposing declarations related to the content of that conversation.

Defendant also makes two legal arguments: (1) that Plaintiff lacks standing because she did not suffer an "injury-in-fact" as that term is defined by the *Spokeo* line of cases; and (2) that Defendant's misrepresentation was not "material," as that term is defined by the *Donohue* line of cases. Both arguments fail because the representation was of a type that would tend to cause actual injury and a material difference in Plaintiff's response to the debt, and because Plaintiff has provided evidence in the form of the declaration filed herewith that tend to prove the same. Defendant couches Plaintiff's claim as a complaint that Defendant did not report to her credit report. Of course that is not the nature of the Complaint, but rather the fact that Defendant claimed to have done something that would harm her, i.e. reporting a negative mark on her credit, when in fact they had not, which caused her to unnecessarily suffer emotional distress that she would not have suffered if Defendant had not made the false statement.

## II.    BRIEF DISCUSSION OF STATEMENT OF FACT FILINGS

Plaintiff does not dispute the statement of undisputed fact made by Defendant, so Plaintiff's disputed fact filing does not dispute any of Defendant's facts, but rather adds facts that Defendant presumably disputes. Certain of Defendant's statement of undisputed facts are weak evidence for Defendant's positions. For instance, Defendant states that: "Defendant's collector did not make any notation in her contemporaneous notes that credit reporting had been discussed…" ECF 23, p. 3, § 19. That is not conclusive evidence that credit reporting was not discussed, and Plaintiff's statement that it was discussed provides evidence of the opposite conclusion, but does not challenge the undisputed fact that the notes contain no mention of that discussion. As another example, Defendant provides evidence that the debt was eventually reported (ECF 23, p. 3, § 18), but that evidence is irrelevant because the only relevant fact is

whether Defendant had reported it as of the date of the conversation on March 21, 2019. Defendant admits that it did not report the debt until April 1, 2019.  ECF No. 23, p. 3 § 17.

III.    PLAINTIFF SUFFERED AN INJURY-IN-FACT AND HAS STANDING TO SUE

Firstly, *Spokeo* analysis does not properly apply here at all because Plaintiff has alleged actual emotional injury that was proximately caused by Defendant's conduct, and has provided proof herewith that she suffered such injury.  Defendant did not see fit to depose Plaintiff in the litigation and therefore can produce no evidence with which it can challenge Plaintiff's statement in her declaration that she was injured by Defendant's false statement.  *Spokeo* encourages courts to deny standing to Plaintiffs who allege violations where: (1) the provisions alleged to be violated are purely procedural or technical; and where (2) the violations of those provisions does not tend to create a risk of concrete harm.  *Robins v. Spokeo,* 867 F.3d 1108, 1113 (9th Cir. 2017).  Neither of those is the case here, and therefore *Spokeo* should not be invoked.

 "…When evaluating a claim of harm, the Ninth Circuit has instructed that courts must ask: "(1) whether the statutory provisions at issue were established to protect [a plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.*    To the extent that the Court disagrees with Plaintiff and finds that the violation alleged is of a type to which it is appropriate to apply *Spokeo* analysis, Plaintiff contends that the type of violation at issue involves a substantive right and does present a material risk of harm.

With regard to the first prong, several 9th Circuit courts have found that the FDCPA provides a substantive right to be free from abusive debt collection practices.  "These provisions are therefore not merely imposing procedural requirements on debt collectors but "'creat[ing] a private duty owed personally to' a consumer by a debt collector to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt." *Avina v.*

*Patenaude & Felix,* 2021 WL 873336, p. 4 (2021), *citing Watkins v. Inv. Retrievers, Inc.*, No. 2:17-CV-01348-KJM-CKD, 2018 WL 558833, at *3 (E.D. Cal. Jan. 24, 2018) (quoting Spokeo, 136 S.Ct. at 1554 (Thomas, J., concurring)); *Brown v. R & B Corp. of Va.*, 67 F. Supp. 3d 691, 700 (E.D. Va. 2017) (quoting 15 U.S.C. § 1692(e)) ("Stated differently, Congress granted consumers a substantive right in being free from 'abusive debt collection practices.' "); *Irvine v. I. C. Sys.,* 198 F. Supp. 3d 1232, 1236 (D. Colo. 2016) ("Through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices.").

The question under the second prong of the analysis is whether the filing of allegedly fraudulent proofs of service in the state debt collection action caused harm, or created a material risk of harm, to Plaintiff's aforementioned concrete interests under the FDCPA.  *Id.* at 4.

Defendant has not cited to any cases with substantially similar facts that have been dismissed based on the lack of a material risk of harm.  Plaintiff has been unable to find any objects of precise comparison either because it is not as common for litigants to allege that a debt collector falsely claims to have already done something as it is for a litigant to allege that a debt collector falsely threatened to do something in the future.  Defendant claims that "anyone experiencing severe emotional distress over a legitimate debt not appearing on her credit report is probably experiencing other stress over a series of bad life choices."  ECF 19, p. 5. This same logic would apply equally well to an allegation of a false threat to sue for a legitimate debt that could legally be sued upon, and such false threats have been found to create a material risk of harm.  Of course, the violation alleged here and the alleged cause of the damage here was not the fact that Defendant did not report the debt to her credit report but rather that the Defendant falsely stated that it had been reported, just as the cause of the damage in a false threat case is not the fact that the threatened action did not take place, but rather the threat that it would take place.  Many federal courts have held that the making of false threats and other false statements creates a material risk of harm, even where the false statements were much less likely to cause harm than a false statement that a damaging credit report had been made.  *See, e.g.,*

*Bond v. Ideal Collection Services, Inc.*, 2018 WL 7351699, 3 (MD FL 2018) (false threat to sue); *Banks v. Kottemann Law Firm*, 2021 WL 1200090, p. 13 (MD LA 2021) (misstating identity of creditor); *Rock v. Greenspoon Marder, LLP*, 2021 WL 248859, pp. 4-5 (D NJ 2021) (overshadowing of 1692g(a) disclosures and amount of debt); *Gibbons v. Weltman, Weinberg & Reis Co., LPA*, 2020 WL 5039316, pp. 5-7 (ED PA 2020) (1692e(10) claim for misrepresentation of attorney involvement). There is no principled distinction to be made between the likelihood that a false threat of future action would cause injury and the likelihood that a false statement that the same thing had already been done would cause injury. In fact, a false statement that something has already been done would be more likely to cause harm than a threat to take action in the future. If a debt collector falsely threatens to take an action at some unspecified time in the future, that threat has less urgency because it has not yet happened and possibly may never happen, or if it does happen it could be far in the future. If a debt collector threatens that an action has already been taken, however, that provides an immediacy to the false statement that tends to cause immediate distress in the consumer. There is no question that a material risk of harm was created by the false statement made here. In any case, Plaintiff has presented evidence that she suffered actual harm due directly to the violation and Defendant has no evidence to oppose it.

Although the cases cited by Defendant on this subject are not on point, Plaintiff believes it appropriate to address them anyway. *Jackson* is an Iowa case that was decided shortly after the Supreme Court *Spokeo* decision and bears little resemblance to the nuanced discussions in the more recent 9th Circuit case law. *Jackson,* 207 F.Supp. 3d at 945-959 (2016). In any case, the alleged violations do not bear any resemblance to the allegation at issue here because the court in *Jackson* found that the alleged misrepresentation could not possibly have caused the Plaintiff harm, whereas here the false statement had a natural tendency to cause harm and in fact it is undisputed that they did cause harm. The case is irrelevant. *Johnston* is irrelevant also because the misrepresentation involved a clerical error in a letter, and the court found that even

the least sophisticated debtor would have realized that it was a clerical error. *Johnston v. Midland Credit Management*, 229 F.Supp.3d 625, (2017).

IV.    DEFENDANT'S MISREPRESENTATION WAS MATERIAL

Plaintiff cannot conceive of any immaterial misrepresentations that would confer standing because any misrepresentation that would "create a risk of harm" must also be material. Thus, if Plaintiff is found to have standing then the alleged misrepresentation is also material. That said, the violation here certainly was material.  As Plaintiff's declaration shows, the false statement that information had already been submitted to credit bureaus caused Plaintiff to treat the matter more urgently than she otherwise would have if the debt had not yet been reported, it caused her to check her credit reports after the false statement was made to verify whether they were actually listed, something she would not have otherwise done, and it affected her attitude regarding the trustworthiness of the creditor in general, which would naturally affect such things as whether she would trust them to take the proper action after paying the debt, such as updating any credit reporting to show that the debt had been paid.  Aside from Plaintiff's unchallenged testimony regarding materiality, the violation in and of itself tends to have a serious effect on a consumer's ability to "choose intelligently."  There is a big difference to any consumer between a debt that is being reported to their credit report and one that is not.  There is also a substantial difference in the choices a consumer will make regarding a debt collector that is trustworthy as compared to one that is not.

V.    CONCLUSION

For the reasons above stated, Defendant's Motion should be denied.

By: /Joshua Trigsted.

Joshua Trigsted, WSBA No. 42917
Attorneys for Plaintiff
DATED May 4, 2021
5200 SW Meadows Rd., Ste. 150
Lake Oswego, OR  97035
(888) 247-4126 xt 1
josh@tlgconsumerlaw.com